UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

Plaintiff,

v.

Twelve Million, Eight Hundred and Thirty-
Four Thousand, Eight Hundred and
Nineteen Dollars and Forty-Four Cents
($12,834,819.44) in funds seized from Bank
of America Business Checking Acct. ending
in 0050, et al,

Defendants *in rem*.

Case No. 24-cv-10533
Hon. Sean F. Cox

**<u>UNDER SEAL</u>**

## **Second Amended Verified Complaint for Forfeiture**

Plaintiff, the United States, by and through Dawn N. Ison, United States Attorney for the Eastern District of Michigan, and K. Craig Welkener, Assistant United States Attorney, pursuant to Fed. R. Civ. Pro. 15(a)(1), states upon information and belief in support of this Second Amended Complaint for Forfeiture as follows:

1

## Introduction

1.      This is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A), 21 U.S.C. § 881(a)(6), and 31 U.S.C. § 5317(c), to forfeit the proceeds of controlled substance distribution and property involved in money laundering.

## Jurisdiction and Venue

2.      This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Section 1345 as this action is being commenced by the United States of America as Plaintiff.

3.      This Court has jurisdiction over this forfeiture action under 28 U.S.C. § 1355(b)(1)(A), as acts giving rise to forfeiture occurred in the Eastern District of Michigan; and under 28 U.S.C. § 1355(b)(1)(B), as the action accrued and/or the Defendants *in rem* were found and seized in the Eastern District of Michigan.

4.      Venue is proper before this Court pursuant to Title 28, United States Code, Section 1391(b)(2) as a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in the Eastern District of Michigan.

5.      Venue is also proper before this Court pursuant to Title 28, United States Code, Sections 1395 (a) and (b) as the action accrued and/or the Defendants *in rem* were found and seized in the Eastern District of Michigan.

## **Defendants *In Rem***

6.    The Defendants *in rem* consist of the following:

a) Twelve Million, Eight Hundred and Thirty-Four Thousand, Eight Hundred and Nineteen Dollars and Forty-Four Cents ($12,834,819.44) in funds seized from Bank of America Business Checking Acct. ending in 0050 (24-DEA-708759);

b) Eight Hundred and Fifty-Nine Thousand, Five Hundred and Fifty-Eight Dollars and Eighty-Nine Cents ($859,558.89) in funds seized from Truist Bank Business Checking Acct. ending in 6878 (24-DEA-708762);

c) Six Hundred and Ninety-One Thousand, Seven Hundred and Thirty-Four Dollars and Fifty Cents ($691,734.50) in funds seized from JP Morgan Chase Bank, Business Acct. ending in 5610 (24-DEA-708763);

d) Two Hundred and Sixty-Eight Thousand, Two Hundred and Sixty-One Dollars and Thirty-Five Cents ($268,261.35) in funds seized from Bank of America Business Checking Acct. ending in 2638 (24-DEA-708764);

e) Seventy-Three Thousand, Five Hundred Dollars and Twenty-Six Cents ($73,500.26) in funds seized from Truist Bank Business Checking Acct. ending in 3679 (24-DEA-708792);

f) Forty-Seven Thousand, One Hundred and Sixty-Nine Dollars and Ninety-Nine Cents ($47,169.99) in funds seized from Bank of America Business Checking Acct. ending in 4176 (24-DEA-708796);

g) Eighty Thousand Eight Hundred and Fifty-Nine Dollars and Eleven Cents ($80,859.11) in funds seized from Bank of America Business Checking Acct. ending in 5017 (24-DEA-709076);

h) Eight Thousand Six Hundred and Ten Dollars and Thirty Cents ($8,610.30) in funds seized from Bank of America Business Checking Acct. ending in 3746 (24-DEA-709077);

i) Six Thousand, Five Hundred Dollars and Eighty-Six Cents ($6,500.86) seized from Bank of America Business Checking Acct. ending in 7283 (24-DEA-709082);

j) Seven Thousand, Thirty-Three Dollars and Seventy-One Cents (7,033.71) seized from Regions Bank, Checking Acct ending in 7298 (24-DEA-709080);

k) Nine Thousand Two Hundred Thirty-Three Dollars and Forty Cents ($9,233.40) seized from JP Morgan Chase Bank, Business Checking Acct. ending in 0770 (24-DEA-710723);

3

l)  Five Thousand Five Hundred Thirty-Five Dollars and Thirteen Cents ($5,535.13) seized from Regions Bank, Business Checking Acct. ending in 2225 (24-DEA-710727);

m) Twenty-Eight Thousand Five Hundred One Dollars and Seventy-Seven Cents ($28,501.77) seized from Bank of America, Business Checking Acct. ending in 6094 (24-DEA-710729); and

n)  Five Thousand Dollars ($5,000.00) seized from Bank of America, Business Checking Acct. #004426928403 (24-DEA-710735).

7.      Members of the Drug Enforcement Administration ("DEA") seized the Defendants *in rem* in December 2023.

## Statutory Basis For Civil Forfeiture

8.      Title 21 of the United States Code, Section 881(a)(6), provides for civil forfeiture to the United States of property derived from or facilitating Title 21 drug violations:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

9.      Title 18, United States Code, Section 981(a)(1)(A) provides for the civil forfeiture to the United States of any property, real or personal, involved in a transaction or attempted transaction in money laundering, specifically transactions in violation of sections 1956, 1957 or 1960 of Title 18, or any property traceable to such property.

4

10.     31 U.S.C. § 5317(c) authorizes civil forfeiture of "any property, real or personal, involved in a transaction or attempted transaction in violation" of currency reporting statutes.  *See* 31 U.S.C. §§ 5313, 5316, and 5324.

11.     Title 18, United States Code, Section 984 provides:

> (a)(1) In any forfeiture action in rem in which the subject property is . . . funds deposited in an account in a financial institution . . .
> (A)    it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for forfeiture; and
> (B)    it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

### **Underlying Criminal Statutes**

12.     Title 21 of the United States Code, Section 841(a)(1), prohibits the illegal distribution of controlled substances:

> (a) [] Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally –
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

13.     18 U.S.C. § 1956(a) prohibits, inter alia, promotion and concealment money laundering, as well as money laundering to avoid reporting requirements:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such

> a financial transaction, which in fact involves the proceeds of specified unlawful activity—
> (A) (i) with the intent to promote the carrying on of specified unlawful activity; or …
> (B) knowing that the transaction is designed in whole or in part —
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
> (ii) to avoid a transaction reporting requirement under State or Federal law . . . [is guilty of money laundering.]

14.     18 U.S.C. § 1957(a) prohibits transactions involving over $10,000 in criminal proceeds:

> Whoever, in any of the circumstances set forth in subsection (d) [the offense takes place in the United States among other locations], knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity . . .

is guilty of engaging in monetary transactions in property derived from specified unlawful activity.

15.     Finally, 31 U.S. Code § 5324 prohibits structuring transactions to evade reporting requirements.

### Factual Basis Supporting Forfeiture

16.     The Defendants *in rem* were involved in money laundering and are therefore subject to federal forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A); and/or are proceeds of drug trafficking and property

facilitating drug trafficking and therefore subject to federal forfeiture pursuant to

21 U.S.C. § 881(a)(6); and are also subject to forfeiture as property involved in a

transaction or attempted transaction in violation of currency reporting statutes

under 31 U.S.C. § 5317(c).  Evidence supporting forfeiture includes, but is not

limited to, the following:

### A. Background on Drug Trafficking Organizations and Money Laundering Organizations

a.  Based on the training, experience and participation in drug trafficking

and money laundering investigations of the verifying agent, as well as the

experience and training of other agents/officers on this investigation, the

Government has learned that drug trafficking organizations, hereinafter referred to

as being "DTOs," operate like an organized business that has several "employees"

and "divisions".  Each division has specific responsibilities such as smuggling of

narcotics; the transportation of narcotics; the distribution of narcotics; the

collection of proceeds; the movement of proceeds; and laundering of proceeds.

These divisions operate separately, by design, so that if one division is

compromised by law enforcement, the entire business will not be compromised.

b.  Based on this same training and experience, the Government also

knows that professional money laundering organizations, hereafter referred to as

"MLOs," also operate like an organized business that have several "employees"

and "divisions".  Each division has employees who are responsible for completing

7

specific tasks such as fielding requests from DTOs to launder or to purchase drug proceeds for/from the DTO; employees who direct couriers to travel and pick up drug proceeds; and employees who handle placement of the drug proceeds into the legitimate financial system (laundering).

c.      In cases where a DTO requests an MLO to purchase drug proceeds, often it is the case that an MLO will use its employee(s) to pick up the DTO's drug proceeds in the form of bulk currency, after which, the MLO will pay the DTO, minus a commission, in the DTO's domestic currency.  For example, a Colombian DTO that has bulk U.S. currency/drug proceeds in the United States will hire an MLO to collect the U.S. dollars/drug proceeds in the United States.  Once the Colombian MLO's employee(s) report to the MLO hierarchy that the U.S. dollars of the Colombian DTO have been received in the United States, in Colombia the Colombian MLO pays the Colombian DTO for the U.S. dollars in Colombian pesos.  In these cases where an MLO purchases the U.S. dollars from the DTO, the MLO subsequently places the drug proceeds into the legitimate financial system so the MLO can use the U.S. dollars to fund other MLO business.  These cases usually involve depositing collected U.S. cash/drug proceeds into U.S. banks by making structured deposits.  Once the U.S. dollars/drug proceeds are in the legitimate financial system, the MLO uses these funds to conduct its own business(es), for example, buying/paying for products and services that are later

8

sold for profit, often including trade goods that are subsequently imported into Colombia or elsewhere.  This kind of process – one money laundering method of operation – is what we refer to as *trade-based money laundering*.

d.      Money launderers and/or drug traffickers often attempt to legitimize or "clean" their profits by establishing shell companies or business fronts. Money launderers and/or drug traffickers and those who launder drug proceeds also will often utilize a legitimate business to hide or "clean" their "dirty" criminally derived money by intermingling it with the legitimate proceeds of the company. In order to accomplish this "cleaning" the business records of the companies involved will have to be falsified.

e.      MLOs and DTOs employ low-level members, with specific tasks, to assist in the laundering of proceeds. These low-level members hereinafter referred to as "money couriers" operate as independent contractors who may only have knowledge of their specific contract or task.   They may employ tokens, which are usually parts of dollar bill serial numbers used as an anonymous identification tactic.  The money couriers will travel to various cities to pick up narcotic proceeds under the direction of MLOs/DTOs.  In addition, MLOs/DTOs which utilize shell corporations or have infiltrated legitimate businesses will often instruct the money couriers to quickly deposit the illicit proceeds into various bank accounts.  These accounts are not usually associated with the money couriers.

9

f.      MLO money couriers successfully complete missions to pick up drug proceeds in the form of bulk currency are given further instructions about what to do with the cash.  These instructions are transmitted between the MLO hierarchy and the money courier using cellular telephones.  The communications are commonly conducted in a cryptic or coded manner and may involve voice and/or text communication, as well as digital photographs and/or video.  For example, MLO money couriers who are instructed to deposit cash into specific bank accounts will be provided the name of the financial institution, the name on the bank account, and the bank account number by the MLO hierarchy.

**B. Investigation of Suspected Money Courier**

g.      In November 2023 the DEA initiated an investigation of an individual for international drug money laundering believed to involve a Colombian drug trafficking organization (DTO).  There is an ongoing investigation into this Colombian DTO.

h.      On November 29, 2023, DEA agents executed a search warrant for records at the Courtyard by Marriott Detroit, Farmington Hills, Room 108, 33043 Hamilton Ct., Farmington Hills, MI 48334.  During which time DEA agents encountered the suspected courier, a citizen of Colombia, determined by United States Border Patrol to be in the United States of America illegally.

i.      DEA Detroit Financial Investigations Group (FIG) located multiple

10

bank transaction summary slips (deposit slips) in the possession of the suspected courier. These receipts were found both as paper receipts as well as photos contained within two cellular phones in his possession. Based on the date, time and location of these deposits, the evidence reflects the cash was structured among these accounts and financial institutions, including the Defendants *in rem* here. Also found in his possession were eight large bundles of an undetermined amount of bulk United States Currency wrapped in rubber bands found in the suspected courier's backpack.

j.      DEA agents mirandized the suspected courier and he agreed to sign a Spanish Miranda form acknowledging those rights.  He told agents that he received instruction, via cellular communication from a subject in Colombia, to pick up money in the Detroit area.  The suspected courier would receive information on who to contact locally and where to meet.  He would then coordinate with that individual to take possession of the money.  Once the suspected courier received the money, he would repackage it and place it in his backpack to transport it, then receive further instruction from a subject in Colombia to make bank deposits.  The suspected courier also explained that he received instructions to turn some money back over to another individual, after first receiving it.  The information for coordinating that transaction was provided by a subject in Colombia.  The suspected courier refused to provide any additional details regarding who he has

11

been coordinating with and advised he deletes and erases most of his communications.

k.      On November 29, 2023, the suspected courier provided both verbal and written consent for the search of the cellular telephones found in his possession by the DEA.   The cellular telephones seized from contained the following: (1) Communications that, after translation by other agents fluent in the Spanish language who have reported back to me, are consistent with the suspected courier receiving instructions/directions from another person to engage in money laundering activities, as well as, the suspected courier not earning enough to cover some expenses paid out-of-pocket and requesting to be reimbursed for some personal expenses incident to these activities, for example, things like travel-related expenses; (2) Digital photographs and videos of bulk U.S. currency, suspected tokens, screenshots for navigating, screenshots of searches performed for bank branch locations, bank deposit slips, the value of the U.S. dollar to the Colombian Peso, handwritten notes that included dates, monetary figures, and in some cases more, including but not limited to handwritten ledger entries; and (3) Digital images evidencing the use of a mobile application on a cellular telephone to conduct and/or to receive electronic/virtual payments.

l.      The cellular telephones also contained saved digital images and videos that assisted to determine his prior whereabouts.  Between November 1,

2023 – November 8, 2023, the suspected courier was in the Charlotte, North Carolina metropolitan area. Beginning on November 16, 2023, he was in the greater Detroit, Michigan metropolitan area.

m.     The suspected courier's cellular telephone also contained digital images of multiple bank account deposit slips from several different financial institutions.  The banks include Bank of America, JP Morgan Chase Bank, Wells Fargo Bank, Truist Bank, Regions Bank, and PNC Bank.  The deposit slips show that the suspected courier has been depositing cash into numerous accounts at six banks, including the Defendants *in rem.*

n.     In summary, from analyzing the cellular telephones and other evidence, the Government understands and believes that the suspected courier has been traveling to different locations in the United States and engaging in suspected money laundering activities involving bulk currency; has been receiving instructions and information from at least one other person; has been using tokens/bills which is commensurate with – and an indication of – conducting clandestine meetings for bulk currency pickups consistent with the laundering of drug proceeds; has been receiving and videoing bulk currency that is packaged in ways, and in some cases bearing markings or notes, that is consistent with drug trafficking proceeds; has been maintaining ledgers and notes consistent with money laundering activities; and has been receiving information germane to

13

specific bank accounts and has been recording and preserving receipts about cash deposits being made into numerous bank accounts at several different financial institutions in a manner that is consistent with structuring.

o.    In short, the suspected courier appears to have been routing drug proceeds through numerous bank accounts, including Defendants *in rem*, as part of a broader operation to launder drug proceeds.

### C. Related Seizure Warrants

p.    Based on the information above, the DEA has obtained numerous seizure warrants related to this action, in Eastern District of Michigan case 2:23-mc-51673.  For a more detailed accounting of the facts known to the Government at the time of those warrants, please see the affidavits filed in that case.

### D. Information Specific to Defendants *in rem*

q.    After execution of the seizure warrants, the investigation into the underlying money laundering and drug trafficking continued and will continue, yielding additional information related to each of the Defendants *in rem*.

*Defendant 6(a): $12,834,819.44 in funds seized*
*from Bank of America Acct. ending in 0050*

r.    The following deposits occurred in this account, per the evidence from the suspected courier's deposit slips.

| Acct. No. Ending in Digits | Bank | Trans. Date | Trans. Time | Amount of Deposit | Teller or Branch or Cashbox |
|---|---|---|---|---|---|
| | | | | | |

14

| 0050 | Bank of America | 11/10/23 | 16:00 | $8,000.00 | Teller 779 |
|------|-----------------|----------|-------|-----------|------------|
| 0050 | Bank of America | 11/10/23 | 16:29 | $9,000.00 | Teller 85 |
| 0050 | Bank of America | 11/10/23 | 16:00 | $8,000.00 | Teller 779 |
| 0050 | Bank of America | 11/10/23 | 16:29 | $9,000.00 | Teller 85 |
| 0050 | Bank of America | 11/22/23 | 10:54 | $9,000.00 | Teller 3 |
| 0050 | Bank of America | 11/22/23 | 11:16 | $9,500.00 | Teller 2 |
| 0050 | Bank of America | 11/22/23 | 11:53 | $9,000.00 | Teller 4 |
| 0050 | Bank of America | 11/22/23 | 12:49 | $9,000.00 | Teller 7 |
| 0050 | Bank of America | 11/22/23 | 13:40 | $7,000.00 | Teller 1 |
| 0050 | Bank of America | 11/22/23 | 14:06 | $6,000.00 | Teller 6 |

s.       After seizure of the Defendant *in rem*, further investigation revealed the account to have received extensive structured deposits, in addition to those identified above linked to the suspected courier and that the account is under the control of a successful Latin American musician.  When DEA interviewed one of the musician's accountants, the accountant attributed the deposits above as being linked to Colombian concerts but could not explain why they occurred in cash in the United States.

*Defendant 6(b): $859,558.89 in funds seized*
*from Truist Bank Acct. ending in 6878*

t.       The following deposits occurred in this account, per the evidence from the suspected courier's deposit slips.

| Acct. No. Ending in Digits | Bank | Trans. Date | Trans. Time | Amount of Deposit |
|----------------------------|------|-------------|-------------|-------------------|
| 6878 | Truist | 11/03/23 | 13:13 | $9,750.00 |
| 6878 | Truist | 11/03/23 | 14:23 | $8,650.00 |
| 6878 | Truist | 11/03/23 | 14:59 | $2,600.00 |

u.       After seizure of the Defendant *in rem*, further investigation revealed

15

that between 03/09/21 and 11/28/23 there were approximately 249 deposits of cash

made into Truist-6878, that in aggregate, amounted to $6,500,977.00 (meaning

17.11% - or approximately 17% - of the deposits made in the time frame involved

cash). After examining the deposits being made into Truist-6878 that involved

cash, the following suspicious activities came to light:

    i. All of the cash deposits involved whole dollar amounts (no change/cents) – and the majority were rounded increments in whole dollar amounts in the thousands-of-dollars.

    ii. Many of the deposits involved commingling large amounts of cash with payroll checks that were not used to pay employees.

    iii. Patterns of structured cash deposits were found that should have required a currency transaction report (CTR) to be filed with Truist Bank. Several (not all) CTRs that were filed were done retroactively by Truist.

    iv. The company that controls the account is located in Miami, Florida, and some of the cash deposits were made at branches in other cities and/or states.

    v. Some of the cash deposits were made just below the federal reporting requirement threshold. Some of these below-threshold cash deposits occurred on single days, others occurred more than once on the same day at different branches.

16

*Defendant 6(c): $693,552.47 in funds seized*
*from JP Morgan Chase Bank Acct. ending in 5610*

v.    The following deposits occurred in this account, per the evidence

from the suspected courier's deposit slips.

| Acct. No. Ending in Digits | Bank | Trans. Date | Trans. Time | Amount of Deposit | Teller or Branch or Cashbox |
|---|---|---|---|---|---|
| 5610 | JP Morgan Chase | 11/22/23 | 11:30 | $8,000.00 | Branch 57 |
| 5610 | JP Morgan Chase | 11/22/23 | 15:00 | $6,000.00 | Branch 273 |
| 5610 | JP Morgan Chase | 11/22/23 | 15:40 | $6,000.00 | Branch 112 |

w.    After seizure of the Defendants *in rem*, further investigation revealed

other individuals in addition to the suspected courier who had played a similar

money courier role.  Many of the companies controlling the underlying bank

accounts had import-export businesses, or other links to international commerce.

*Defendants 6(d-i)*

x.    The following deposits occurred in these accounts, per the evidence

from the suspected courier's deposit slips.

| Acct. No. Ending in Digits | Bank | Trans. Date | Trans. Time | Amount of Deposit | Teller |
|---|---|---|---|---|---|
| 2638 | Bank of America | 10/24/23 | | $7,700.00 | |
| 2638 | Bank of America | 11/15/23 | 13:53 | $5,000.00 | Teller 5 |
| 3679 | Truist | 11/03/23 | 15:01 | $5,000.00 | |
| 3679 | Truist | 11/13/23 | 13:55 | $9,980.00 | |
| 4176 | Bank of America | 10/23/23 | 15:17 | $4,850.00 | Teller 2 |
| 4176 | Bank of America | 10/23/23 | 17:16 | $4,150.00 | Teller 4 |
| 5017 | Bank of America | 10/24/23 | 10:33 | $3,500.00 | Teller 1 |
| 3746 | Bank of America | 11/08/23 | 13:59 | $7,500.00 | Teller 77 |
| 3746 | Bank of America | 11/09/23 | 13:34 | $8,000.00 | |
| 3746 | Bank of America | 11/10/23 | 11:10 | $8,500.00 | Teller 86 |

| 7283 | Bank of America | 11/08/23 | 10:31 | $4,820.00 | Teller 56 |
| 7283 | Bank of America | 11/09/23 | 14:24 | $4,500.00 | Teller 93 |

y.      The suspected courier used these accounts to move drug proceeds in the amounts listed above.  Further investigation of these accounts has revealed that they belong to various companies with links to international commerce, consistent with a trade-based money laundering operation.

*Defendants 6(j-n)*

z.      The following deposits occurred in these accounts, per the evidence from the suspected courier's deposit slips.

| Acct. No. Ending in Digits | Bank | Trans. Date | Trans. Time | Amount of Deposit | Teller or Branch |
|---|---|---|---|---|---|
| 7298 | Regions | 11/09/23 | 10:27 | $8,000.00 | |
| 0770 | JP Morgan Chase | 11/08/23 | 10:04 | $9,000.00 | Branch 387917 |
| 2225 | Regions | 11/06/23 | 10:56 | $5,000.00 | |
| 6094 | Bank of America | 11/06/23 | 09:51 | $9,950.00 | Teller 85 |
| 8403 | Bank of America | 11/13/23 | 17:02 | $5,000.00 | Teller 85 |

## CLAIM FOR RELIEF

17.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 16, including 16(a-z).

18.     In sum, the accounts from which the Government seized Defendants *in rem* had received drug proceeds, in structured form designed to avoid currency transaction reporting requirements.  By intermingling drug proceeds with

18

otherwise legal business activity, those responsible sought to conceal their nature and source as drug proceeds, thus involving the entire accounts in concealment money laundering of various kinds, as well as promoting the underlying drug distribution.

19.     The Defendants *in rem* were therefore involved in money laundering and are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A); and/or are proceeds of drug trafficking and property facilitating drug trafficking and therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6); and/or constitute property involved in a transaction or attempted transaction in violation of currency reporting statutes, and are thus subject to forfeiture under 31 U.S.C. § 5317(c).

## Conclusion and Relief

Plaintiff respectfully requests that warrants for arrest of the Defendants *in rem* be issued; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* to be condemned and forfeited to the United States for disposition according to law; and that the United States be granted such other further relief as this Court may deem just and proper together with costs and disbursements of this action.

Respectfully submitted,

19

Dawn N. Ison
United States Attorney


*/s/ K. Craig Welkener*

K. Craig Welkener
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-0248
Kenton.welkener@usdoj.gov
DC Bar No. 1033585

Date: November 4, 2024

20

## **VERIFICATION**

I, Todd N. Bing, state that I am a Task Force Officer of the Drug Enforcement Administration.  I have read the foregoing Second Amended Complaint for Forfeiture and declare under penalty of perjury that the facts contained therein are true and correct to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement agents and employees of the United States Government.

_____
Todd N. Bing
Task Force Officer
Drug Enforcement Administration

Dated:   November 4, 2024